E-FILED
Friday, 31 August, 2007  04:17:11 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| FABIAN SANTIAGO, #B-79716, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1429 |
| | ) | |
| ROGER E. WALKER, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, LES AMDOR, SHERRY BENTON, SHARON EDEN, MARGE HAAB, PATRICK HASTINGS, DELECTOR KENNEDY, KATINA LIVINGSTON, LEX McBURNEY, MARK McNABB, CARRIE MELVIN, JENNIFER MELVIN, MICHAEL MELVIN, STEPHEN D. MOTE, NANCY OSMAN, CHRISTIAN PAUL, STEWART PENOYER, TIMOTHY POTTS, PAULA RICH, EMILY RUSKIN, MARK SPENCER, ROGER E. WALKER, JR., WESLEY WILES, and COREY WILSON, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, hereby submit Defendants' Motion for Summary Judgment.  In support thereof, Defendants state as follows:

**INTRODUCTION**

Plaintiff is an inmate currently incarcerated within the Illinois Department of Corrections.  On January 13, 2005, Plaintiff filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 regarding alleged violations of his constitutional rights that occurred at Pontiac Correctional Center.  As a result of the section 1915A merit review, this Court found that Plaintiff's Complaint stated the following federal claims: (a) the Defendants violated the Plaintiff's First Amendment rights when they repeatedly interfered with his

grievances by refusing to make copies, refusing to respond, failing to forward them on, or destroying them in retaliation for the Plaintiff's previous grievances and lawsuits; (b) the Defendants violated Plaintiff's right to meaningful access to the courts under the First Amendment when they interfered with the Plaintiff's grievances; (c) the Defendants violated the Plaintiff's First Amendment rights when they repeatedly interfered with his outgoing mail in retaliation for previous lawsuits and grievances; and (d) the Defendants violated the Plaintiff's First and Fourth Amendment rights based on repeated delays and/or tampering and/or censoring of his outgoing mail.  The Court also found that the stated claims are against the Defendants in their official and individual capacities.

Defendants deny that any action taken by them was done in retaliation for the Plaintiff's prior litigation or grievances.  Defendants contend that all actions taken were initiated without a retaliatory motive.  Further, Plaintiff has no evidence to support his claims of retaliation.  Moreover, Plaintiff has no evidence to support either his claim of a lack of access to the courts, or his claim of an official policy to interfere with grievances and outgoing mail at Pontiac Correctional Center.   As such, Defendants believe that summary judgment should be granted.

## MATERIAL FACTS CLAIMED TO BE UNDISPUTED

1.    Plaintiff was an inmate incarcerated at Pontiac Correctional Center for all dates referred to in his Complaint.

2.    At no time did Les Amdor have any involvement with the Plaintiff's grievances or outgoing mail.  (Defendants' Exhibit A, Affidavit of Les Amdor; Defendants' Exhibit B, Plaintiff's Deposition, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

3.    At no time did Carrie Melvin have any involvement with the Plaintiff's outgoing mail.  Carrie Melvin never refused to copy, forward, or respond to any of the Plaintiff's

grievances that came into her possession.  (Defendants' Exhibit C, Affidavit of Carrie Melvin; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

4.     On October 11, 2004, Carrie Melvin recommended that the Plaintiff's grievance dated June 2, 2004, be denied as Plaintiff's claims of staff misconduct could not be substantiated.  The recommendation was based upon a total review of all available information.  (Defendants' Exhibit C; Defendants' Exhibit W, Attached Document 1).

5.     At no time did Patrick Hastings have any involvement with the Plaintiff's outgoing mail.  Patrick Hastings never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into his possession.  (Defendants' Exhibit E, Affidavit of Patrick Hastings; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

6.     On November 10, 2003, Patrick Hastings recommended that the Plaintiff's grievance dated October 10, 2003, be denied as Plaintiff's claims of staff misconduct could not be substantiated.  The recommendation was based upon a total review of all available information.  (Defendants' Exhibit E; Defendants' Exhibit W, Attached Document 2).

7.     At no time did Jennifer Melvin have any involvement with the Plaintiff's outgoing mail.  Jennifer Melvin never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into her possession.  (Defendants' Exhibit F, Affidavit of Jennifer Melvin; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

8.     On March 11, 2004, Jennifer Melvin recommended that the Plaintiff's grievance dated December 29, 2003, be denied because Plaintiff's claims of staff misconduct could not be substantiated.  The recommendation was based upon a total review of all available information.  (Defendants' Exhibit F; Defendants' Exhibit W, Attached Document 3).

9.    At no time did Katina Livingston have any involvement with the Plaintiff's outgoing mail.  Katina Livingston never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into her possession.  (Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

10.    On May 31, 2004, Katina Livingston recommended that the Plaintiff's grievance dated March 15, 2004, be denied as Plaintiff's claims of staff misconduct could not be substantiated.  The recommendation was based upon a total review of all available information. (Defendants' Exhibit D, Affidavit of Records Office Supervisor, Attached Document 1).

11.    At no time did Nancy Osman have any involvement with the Plaintiff's outgoing mail.  Nancy Osman never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into her possession.  (Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

12.    On July 9, 2004, Nancy Osman recommended that the Plaintiff's grievance dated May 7, 2004, be denied as Plaintiff's claims of staff misconduct could not be substantiated.  The recommendation was based upon a total review of all available information.  (Defendants' Exhibit W, Attached Document 4).

13.    At no time did Stewart Penoyer have any involvement with the Plaintiff's outgoing mail.  Stewart Penoyer never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into his possession.  (Defendants' Exhibit H, Affidavit of Stewart Penoyer; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

14.    On November 10, 2003, Stewart Penoyer recommended that the Plaintiff's grievance dated October 21, 2003, be denied as Plaintiff's claims of staff misconduct could

not be substantiated.  The recommendation was based upon a total review of all available information.  (Defendants' Exhibit H; Defendants' Exhibit D, Attached Document 2).

15.    At no time did Emily Ruskin have any involvement with the Plaintiff's outgoing mail.  Emily Ruskin never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into her possession.  (Defendants' Exhibit I, Affidavit of Emily Ruskin; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

16.    As grievance officer, Emily Ruskin recommended that the Plaintiff's grievances dated June 29, 2004, and July 16, 2004, be denied as Plaintiff's claims of staff misconduct could not be substantiated.  The recommendation was based upon a total review of all available information.  (Defendants' Exhibit I; Defendants' Exhibit W, Attached Document 5).

17.    As counselor, on October 22, 2003, Emily Ruskin responded to and investigated Plaintiff's grievance dated October 10, 2003, and found that Plaintiff's allegations could not be substantiated.    (Defendant's Exhibit I, Defendants' Exhibit W, Attached Document 2).

18.    At no time did Wesley Wiles have any involvement with the Plaintiff's outgoing mail.  Wesley Wiles never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into his possession.  (Defendants' Exhibit J, Affidavit of Wesley Wiles; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

19.    As counselor, on October 22, 2003, Wesley Wiles responded to and investigated Plaintiff's grievance dated October 21, 2003, and found that Plaintiff's allegations could not be substantiated.  (Defendant's Exhibit J, Defendants' Exhibit D, Attached Document 2).

20.    As counselor, on January 20, 2004, Wesley Wiles responded to and investigated Plaintiff's grievance dated December 29, 2003, and found that Plaintiff's allegations could not be substantiated.  (Defendant's Exhibit J, Defendants' Exhibit W, Attached Document 3).

21.    At no time did Mark McNabb have any involvement with the Plaintiff's outgoing mail.  Mark McNabb never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into his possession.  (Defendants' Exhibit K, Affidavit of Mark McNabb; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

22.    As counselor, on May 10, 2004, Mark McNabb responded to and investigated Plaintiff's grievance dated May 7, 2004, and found that Plaintiff's allegations could not be substantiated.  (Defendant's Exhibit K, Defendants' Exhibit W, Attached Document 4).

23.    As counselor, on June 14, 2004, Mark McNabb responded to Plaintiff's grievance dated June 2, 2004, and told the Plaintiff that he could not read his handwriting. (Defendant's Exhibit K, Defendants' Exhibit W, Attached Document 1).

24.    As counselor, on July 18, 2004, Mark McNabb responded to and investigated Plaintiff's grievance dated July 16, 2004, and found that Plaintiff's allegations could not be substantiated.  (Defendant's Exhibit K, Defendants' Exhibit W, Attached Document 5).

25.    Mark McNabb did not respond to Plaintiff's grievance dated June 29, 2004, because Plaintiff filed the grievance as an emergency directly to the Warden's office. (Defendant's Exhibit K, Defendants' Exhibit D, Attached Document 2).

26.    At no time did Timothy Potts have any involvement with the Plaintiff's grievances or outgoing mail. (Defendants' Exhibit L, Affidavit of Timothy Potts; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

27.    At no time did Delector Kennedy have any involvement with the Plaintiff's grievances or outgoing mail.  (Defendants' Exhibit M, Affidavit of Delector Kennedy; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

28.    At no time did Michael Melvin have any involvement with the Plaintiff's grievances or outgoing mail.  (Defendants' Exhibit N, Affidavit of Michael Melvin; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

29.    At no time did Christian Paul have any involvement with the Plaintiff's grievances.  (Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

30.    Christian Paul never delayed, tampered with, censored, or destroyed the Plaintiff's outgoing mail.  Christian Paul never returned a letter to Plaintiff indicating that correctional officer McBurney refused to place the letter in the outgoing mail.  (Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

31.    At no time did Corey Wilson have any involvement with the Plaintiff's grievances or outgoing mail. (Defendants' Exhibit P, Affidavit of Corey Wilson; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

32.    At no time did Lex McBurney have any involvement with the Plaintiff's grievances.  (Defendants' Exhibit Q, Affidavit of Lex McBurney; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

33.    Lex McBurney never delayed, tampered with, censored, or destroyed the Plaintiff's outgoing mail.  Lex McBurney never destroyed any of Plaintiff's petitions for mandamus, letters to prosecutors, letters to family, or letters to newspapers. (Defendants' Exhibit Q; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

34.    At no time did Marge Haab have any involvement with the Plaintiff's grievances.  She never delayed, tampered with, or censored Plaintiff's outgoing mail.

Marge Haab had no knowledge of Plaintiff's previous lawsuits or grievances  (Defendants' Exhibit R, Affidavit of Marge Haab; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

35.     At no time did Mark Spencer have any involvement with the Plaintiff's outgoing mail.  Mark Spencer never destroyed any of Plaintiff's grievances, lawsuits, or outgoing mail.  (Defendants' Exhibit S, Affidavit of Mark Spencer; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

36.     Mark Spencer never improperly refused to provide Plaintiff with copies of his grievances.  In August 2003, Plaintiff forwarded a grievance to the law library for copying.  Plaintiff was provided with one copy of his grievance and Plaintiff's request for additional copies was refused.  (Defendants' Exhibit S; Defendants' Exhibit B, pg. 9-11, 77-78; Plaintiff's Complaint, ¶¶ 5-30).

37.     At no time did Sharon Eden have any involvement with the Plaintiff's outgoing mail.  Sharon Eden never destroyed any of Plaintiff's grievances, lawsuits, or outgoing mail. (Defendants' Exhibit T, Affidavit of Sharon Eden; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

38.     Sharon Eden never improperly refused to provide Plaintiff with copies of his grievances.  In August 2003, Plaintiff forwarded a grievance to the law library for copying.  Plaintiff was provided with one copy of his grievance and Plaintiff's request for additional copies was refused.  (Defendants' Exhibit T; Defendants' Exhibit B, pg. 9-11, 77-78; Plaintiff's Complaint, ¶¶ 5-30).

39.     At no time did Paula Rich have any involvement with the Plaintiff's outgoing mail.  Paula Rich never destroyed any of Plaintiff's grievances, lawsuits, or outgoing mail.

(Defendants' Exhibit U, Affidavit of Paula Rich; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

40.    Paula Rich never improperly refused to provide Plaintiff with copies of his grievances.  In August 2003, Plaintiff forwarded a grievance to the law library for copying. Plaintiff was provided with one copy of his grievance and Plaintiff's request for additional copies was refused.  (Defendants' Exhibit U; Defendants' Exhibit B, pg. 9-11, 77-78; Plaintiff's Complaint, ¶¶ 5-30).

41.    According to the Illinois Administrative Code, inmates are to be provided copying services for legal materials that may not be reasonably duplicated by other means. 20 Ill. Admin. Code 430.40(b).

42.    At no time did Stephen Mote have any personal involvement with the Plaintiff's outgoing mail.  Stephen Mote had no knowledge that of any of the Plaintiff's outgoing mail or grievances were being improperly delayed, tampered with, censored, or destroyed.  (Defendants' Exhibit V, Affidavit of Stephen Mote; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

43.    Either Stephen Mote or his designee concurred in the denial of Plaintiff's grievance based upon the recommendations and investigations conducted by the grievance officers and correctional counselor.  (Defendants' Exhibit V; Defendants' Exhibit W, Attached Document 1-11; Defendants' Exhibit D, Attached Documents 1-2).

44.    At no time did Stephen Mote or his designee fail to respond to any grievance filed by the Plaintiff out of retaliation for the Plaintiff having filed prior grievances or lawsuits. (Defendants' Exhibit V; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

45.    At no time did Sherry Benton have any personal involvement with the Plaintiff's outgoing mail.  Sherry Benton works in Springfield, Illinois, and not at Pontiac

Correctional Center. Sherry Benton had no knowledge that any of the Plaintiff's outgoing mail or grievances were being improperly delayed, tampered with, censored, or destroyed. (Defendants' Exhibit W, Affidavit of Sherry Benton; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

46.    Sherry Benton never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into her possession. All of the Plaintiff's grievances that Sherry Benton reviewed were denied based upon a total review of all available information. Given that review, it was the opinion of the ARB that the issue was appropriately addressed by the institutional administration and the allegations of staff misconduct could not be substantiated. (Defendants' Exhibit W; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

47.    At no time did Roger Walker, Jr. have any involvement with the Plaintiff's grievances or outgoing mail. Roger E. Walker Jr., did not personally review any grievances filed by Fabian Santiago, B-79716. (Defendants' Exhibit X, Affidavit of Terri Anderson; Defendants' Exhibit B, pg. 77-78; Plaintiff's Complaint, ¶¶ 5-30).

48.    There was no official policy at Pontiac Correctional Center to destroy, tamper with, or delay inmate grievances or mail. (Defendants' Exhibits A, C, E-X).

49.    Plaintiff has not been prevented from filing any lawsuits or had any harm caused to pending lawsuits as a result of the Defendants' alleged interference with the Plaintiff's grievances. (Defendants' Exhibit B, pg. 60-61).

## **APPLICABLE LAW**

### I.    **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of

material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the suit, under the

governing law, will properly preclude the entry of summary judgment.  Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986).  In making this determination, the court is to draw

inferences from the record in the light most favorable to the non-moving party.  The court

is not required, however, to draw every conceivable inference; rather, it may draw only

those that are reasonable.  DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326,

333 (7th Cir. 1986).

The Seventh Circuit clarified the standard further in Collins v. Associated

Pathologists, Ltd., 844 F.2d 473 (7th Cir. 1988), *cert. denied*, 488 U.S. 852 (1988):

> The existence of a triable issue is no longer sufficient to survive a motion for
> summary judgment . . . the test for summary judgment is whether sufficient
> evidence exists in the pre-trial record to allow the non-moving party to survive
> a motion for directed verdict.

Id. at 476.

The United States Supreme Court in Celotex Corp. v. Catrett, 477 U.S. 317 (1986),

established that a party moving for summary judgment can prevail simply by showing that

the other party has no evidence on an issue which the party has the burden of proof.

Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1183 (7th Cir. 1993).  Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no "genuine" issue for trial.  Mechnig v. Sears Roebuck & Co., 864 F.2d 1359

(7th Cir. 1988).  The plaintiff must come forward with evidence that would reasonably

permit the finder of fact to find in plaintiff's favor on a material question; otherwise, the court

must enter summary judgment against the plaintiff.  Waldridge v. American Hoechst Corp.,

24 F.3d 918, 920 (7th Cir. 1994); <u>International Union of Operating Engineers v. Associated General Contractors</u>, 845 F.2d 704, 708 (7th Cir. 1988).

## II.    RETALIATION

An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. <u>DeWalt v. Carter</u>, 224 F.3d 607, 618 (7th Cir. 1999), *citing* <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274, 283-4, 97 S. Ct. 568 (1977). In order to prove a retaliation claim, Plaintiff must prove that (1) he had engaged in a protected conduct and (2) he was retaliated against for engaging in this protected conduct. <u>Dewalt v. Carter</u>, 224 F.3d at 618 (7th Cir. 2000). Even if the plaintiff proves these elements, that is not enough if the defendant can show the result would still be the same absent a retaliatory motive. <u>Mt. Healthy City School Dist. v. Doyle</u>, 429 U.S. 274 , 287 (1977). It is not enough for the plaintiff to merely state retaliation played a part in the defendants' actions. <u>Babcock v. White</u>, 102 F.3d 267, 275 (7th Cir. 1996).

## III.    ACCESS TO THE COURTS

The constitutional right of access to the courts requires inmates be assisted in preparation and filing of meaningful legal papers by providing them with adequate law libraries or assistance from persons trained in the law. <u>Bounds v. Smith</u>, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498 (1997). An inmate claiming a denial of his right to access to the courts must establish he suffered an actual injury, defined as actual prejudice to existing or impending litigation. <u>Lewis v. Casey</u>, 518 U.S. 343, 348, 351, 116 S. Ct. 2174, 2178, 2189 (1996). As the Supreme Court stated in <u>Lewis</u>:

> "<u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of

12

their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."

Lewis, 518 U.S. at 355, 116 S. Ct. at 2182.

The injuries contemplated in Lewis are not theoretical but must evidence an actual hindrance of an inmate's efforts to pursue a legal claim such as the dismissal of a complaint for failure to satisfy technical requirements or the failure of an inmate to even prepare a complaint for an actionable harm due to law library inadequacies. Lewis, 518 U.S. at 351, 116 S. Ct. at 2180.

## IV.    PERSONAL INVOLVEMENT

When bringing a claim against a state employee under §1983, a plaintiff must show that the employee was "personally responsible for the constitutional deprivation." J.H. and J.D. v. Johnson, et al., 346 F.3d 788, 793 (7th Cir. 2003). To be personally involved, defendants must act or fail to act with a deliberate or reckless disregard of plaintiff's constitutional rights or must directly or knowingly consent to the conduct alleged to constitute the violation. Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985). "Section 1983 will not support a claim based on a *respondeat superior* theory of liability." Polk County v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445, 453 (1981). Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988). A supervisor can be liable only for his own misconduct, not that of those under his supervision. Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir. 1985). Thus, a supervisory official must be personally involved in the alleged conduct to be liable. Jones, 856 F.2d at 992. Moreover, notification of constitutional deprivations provided by an inmate to a prison official by way of letter or

personal conversation is insufficient to impose liability on a defendant under §1983. *See* Crowder v. Lash, 687 F.2d 996, 1006 (7th Cir. 1997).

### V.    QUALIFIED IMMUNITY

Under Section 1983, a Defendant is entitled to qualified immunity from money damages for his discretionary actions if his conduct does not violate any clearly-established constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S. Ct. 2727, 2737 (1982). The test is purely legal, without regard to the subjective motivations of the defendant. Harlow, 457 U.S. at 818-19, 102 S. Ct. at 2738; Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806 (1985); Davis v. Scherer, 468 U.S. 183, 191, 104 S. Ct. 3012, 3017 (1984). Officials do not lose the immunity merely because they violate some statutory or administrative provisions of state law. Davis 468 U.S. at 194, 104 S. Ct. at 3018-3019.

In order for a plaintiff to defeat a qualified immunity claim, he must prove that defendants have violated a constitutional right that was clearly established at the time of the alleged misconduct. McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995). The burden of establishing the existence of such a clearly established constitutional right is on plaintiff. McGrath, 44 F.3d at 570 *citing* Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988). He must point out a closely analogous case that establishes that he had a right to be free from the specific conduct alleged to violate the general constitutional right at issue. Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993). Plaintiff must also establish that the alleged violated rights were so clear that a reasonable official would understand that what he is doing at the time violates the right. McGrath, 44 F.3d at 570; *See also* Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034 (1987).

## ARGUMENT

**I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM REGARDING HIS ACCESS TO THE COURTS.**

As stated in the Court's merit review order, Plaintiff's Complaint stated a claim that Defendants violated Plaintiff's right to meaningful access to the courts when they interfered with the Plaintiff's grievances.  However, the record is undisputed that any alleged interference with the Plaintiff's grievances by the Defendants failed to cause any harm to any of the Plaintiff's pending lawsuits or his ability to file potential causes of action. (Undisputed Fact No. 49).  Accordingly, because the Plaintiff is unable to demonstrate any prejudice to existing or impending litigation, Defendants are entitled to summary judgment.

**II.    DEFENDANTS LES AMDOR, DELECTOR KENNEDY, TIMOTHY POTTS, MICHAEL MELVIN, AND COREY WILSON ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.**

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits.  Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail.  There is no evidence that Defendants Amdor, Kennedy, Potts, Melvin, and Wilson had any personal involvement with the Plaintiff's outgoing mail or his grievances.  (Undisputed Facts Nos. 2, 26-28, 31).  The only evidence offered by the Plaintiff regarding any of these Defendants is that Plaintiff made

Defendants Wilson and Kennedy aware of the alleged issues with his outgoing mail and grievances and the Defendants failed to take any corrective action. (Plaintiff's Complaint, ¶¶ 18, 21, 24). Accordingly, Defendants Amdor, Kennedy, Potts, Melvin, and Wilson are entitled to summary judgment.

### III. DEFENDANTS PATRICK HASTINGS, KATINA LIVINGSTON, CARRIE MELVIN, JENNIFER MELVIN, NANCY OSMAN, EMILY RUSKIN, AND STEWART PENOYER ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits. Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail. There is no evidence that Defendants Hastings, Livingston, Carrie Melvin, Jennifer Melvin, Ruskin, Osman, or Penoyer had any personal involvement with the Plaintiff's outgoing mail or ever refused to copy, forward, or respond to any of the Plaintiff's grievances that came into their possession. (Undisputed Fact Nos. 3, 5, 7, 9, 11, 13, 15). Plaintiff's evidence with respect to these Defendants, except for Defendant Ruskin, is limited to the fact that they were grievance officers who denied Plaintiff's grievances and failed to take corrective action to remedy the alleged misconduct in handling his grievances or mail. (Plaintiff's Complaint, ¶¶ 12, 19-26) However, based upon the investigation conducted in reviewing the Plaintiff's grievances, corrective action was unwarranted as the Plaintiff's claims of staff misconduct could not be

substantiated. (Undisputed Facts Nos. 4, 6, 8, 10, 12, 14, 16) With respect to Defendant Ruskin, in addition to her above actions as a grievance officer, Plaintiff further claims that when she was a counselor she failed to take corrective action in response to a grievance. However, Defendant Ruskin denied that grievance after conducting an investigation and determining that the Plaintiff's allegations could not be substantiated. (Undisputed Fact No. 17). Plaintiff offers no evidence to demonstrate that the grievances were denied because of a retaliatory reason. Further, Plaintiff fails to establish that the Defendants had any knowledge of the Plaintiff's prior lawsuits or his previous grievances. Accordingly, Defendants are entitled to summary judgment.

### IV. DEFENDANTS MARK SPENCER, PAULA RICH, AND SHARON EDEN ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits. Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail. There is no evidence that Defendants Spencer, Rich, or Eden had any personal involvement with the Plaintiff's outgoing mail or ever destroyed any of the Plaintiff's grievances, lawsuits, or outgoing mail. (Undisputed Fact Nos. 35, 37, 39). Further, there is no evidence that the Defendants ever improperly refused to provide Plaintiff with copies of his grievances. (Undisputed Facts Nos. 36, 38, 40). In August 2003, Plaintiff forwarded a grievance to the law library for copying. Plaintiff

17

acknowledges that he was provided with one copy and was denied additional copies. (Undisputed Facts Nos. 36, 38, 40). Given that Plaintiff was provided with a copy of the grievance and that the Illinois Administrative Code provides that inmates are to be provided with copying services for legal materials that may not be reasonably duplicated by other means, Defendants did not improperly refuse to provide Plaintiff with copies of his grievances. (Undisputed Fact No. 41). Accordingly, Defendants Spencer, Rich, and Eden are entitled to summary judgment.

### V. DEFENDANT MARGE HAAB IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits. Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail. There is no evidence that Defendant Haab had any personal involvement with the Plaintiff's grievances or ever delayed, tampered with, censored, or destroyed any of the Plaintiff's outgoing mail. (Undisputed Fact No. 34). Further, there is no evidence that Defendant Haab had any knowledge of Plaintiff's previous lawsuits or grievances. (Undisputed Fact No. 34). Accordingly, Defendant Haab is entitled to summary judgment.

18

### VI.   DEFENDANTS WESLEY WILES AND MARK MCNABB ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits.  Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail.  There is no evidence that Defendants Wiles and McNabb had any personal involvement with the Plaintiff's outgoing mail or ever refused to copy, forward, or respond to any of the Plaintiff's grievances that came into their possession.  (Undisputed Fact Nos. 18, 21).  Plaintiff's evidence with respect to these Defendants is limited to the fact that they were counselors who denied Plaintiff's grievances and failed to take corrective action to remedy the alleged misconduct in handling his grievances or mail.  However, Defendants Wiles and McNabb denied Plaintiff's grievances after conducting investigations and determining that the Plaintiff's allegations could not be substantiated.  (Undisputed Facts Nos. 19-22, 24).  Further, Defendant McNabb did not respond to Plaintiff's grievance dated June 2, 2004, because he could not read Plaintiff's handwriting.  (Undisputed Fact No. 23).  Also, Defendant McNabb did not respond to Plaintiff's grievance June 29, 2004, because Plaintiff had filed the grievance as an emergency directly to the Warden's office.  (Undisputed Fact No. 25).  Plaintiff offers no evidence to demonstrate that the grievances were denied because of a retaliatory reason.  Accordingly, Defendants are entitled to summary judgment.

VII.    **DEFENDANT CHRISTIAN PAUL IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.**

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits. Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail. There is no evidence that Defendant Paul had any personal involvement with the Plaintiff's grievances or ever delayed, tampered with, censored, or destroyed any of the Plaintiff's outgoing mail. (Undisputed Fact Nos. 29-30). Further, there is no evidence that Defendant Paul had any knowledge of Plaintiff's previous lawsuits or grievances. Accordingly, Defendant Paul is entitled to summary judgment.

VIII.    **DEFENDANT LEX MCBURNEY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.**

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits. Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays,

tampering, and censoring of his outgoing mail.  There is no evidence that Defendant McBurney had any personal involvement with the Plaintiff's grievances or ever delayed, tampered with, censored, or destroyed any of the Plaintiff's outgoing mail.  (Undisputed Fact Nos. 32-33).  Further, there is no evidence that Defendant McBurney had any knowledge of Plaintiff's previous lawsuits or grievances.  Accordingly, Defendant McBurney is entitled to summary judgment.

IX.    **DEFENDANT STEPHEN MOTE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.**

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits.  Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail.  There is no evidence that Defendant Mote had any personal involvement with the Plaintiff's outgoing mail or had any knowledge that any of the Plaintiff's outgoing mail or grievances were being delayed, tampered with, censored, or destroyed.  (Undisputed Fact No. 42).  Defendant Mote or his designee concurred in the denial of Plaintiff's grievances based upon the recommendations and investigations conducted by the grievance officers and counselors.  (Undisputed Fact No. 43).  There is no evidence that Stephen Mote or his designee failed to respond to any of the Plaintiff's grievances.  (Undisputed Fact No. 44).  Plaintiff offers no evidence to

demonstrate that the grievances were denied because of a retaliatory reason. Accordingly, Defendant Mote is entitled to summary judgment.

**X. DEFENDANT SHERRY BENTON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.**

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits. Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail. There is no evidence that Defendant Benton had any personal involvement with the Plaintiff's outgoing mail or had any knowledge that any of the Plaintiff's outgoing mail or grievances were being delayed, tampered with, censored, or destroyed. (Undisputed Fact No. 45). In fact, Sherry Benton works in Springfield and has no opportunity to handle or observe the handling of mail at Pontiac Correctional Center. (Undisputed Fact No. 45). Defendant Benton never refused to copy, forward, or respond to any of the Plaintiff's grievances that came into her possession. All of the Plaintiff's grievances that Sherry Benton reviewed were denied based upon a total review of all available information. Given that review, it was the opinion of the ARB that the issue was appropriately addressed by the institutional administration and the allegations of staff misconduct could not be substantiated. (Undisputed Fact No. 46). Plaintiff offers no evidence to demonstrate that the grievances were denied because of a retaliatory reason. Accordingly, Defendant Benton is entitled to summary judgment.

### XI.    DEFENDANT ROGER E. WALKER JR. IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF RETALIATION AND VIOLATIONS OF HIS FIRST AND FOURTH AMENDMENT RIGHTS WITH REGARD TO HIS OUTGOING MAIL.

As stated in the Court's merit review order, Plaintiff's Complaint stated two separate retaliation claims: (1) Defendants repeatedly interfered with Plaintiff's grievances in retaliation for Plaintiff's prior grievances or lawsuits; and (2) Defendants repeatedly interfered with the Plaintiff's outgoing mail in retaliation for Plaintiff's prior grievances or lawsuits.  Similarly, the Court stated that Plaintiff's Complaint stated a claim that the Defendants violated Plaintiff's First and Fourth Amendment rights by repeated delays, tampering, and censoring of his outgoing mail.  There is no evidence that Defendant Walker had any personal involvement with the Plaintiff's outgoing mail or his grievances. (Undisputed Facts No. 47).  Defendant Walker did not personally review any grievances filed by the Plaintiff.  (Undisputed Fact No. 47).  Plaintiff offers no evidence to demonstrate that the grievances were denied because of a retaliatory reason.  Further, Plaintiff fails to establish that the Defendants had any knowledge of the Plaintiff's prior lawsuits or his previous grievances.  Accordingly, Defendant is entitled to summary judgment.

### XII.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM THAT THERE WAS AN OFFICIAL POLICY AND PRACTICE OF DESTROYING GRIEVANCES AND MAIL AT PONTIAC CORRECTIONAL CENTER.

As stated in the Court's merit review order, Plaintiff's Complaint stated a claim against the Defendants in their official capacity as it alleges that there was a policy and practice of destroying grievances and mail at Pontiac Correctional Center.  There is no evidence that such a policy ever existed.  (Undisputed Fact No. 48).  The only evidence offered is the Defendants' repeated sworn statements that such a policy never existed.

23

(Undisputed Fact No. 48). Moreover, the Eleventh Amendment bars the recovery of money damages from the Defendants in their official capacity. *See* <u>Porco v. Trustees of Indiana University</u>, 453 F.3d 390, 395 (7th Cir. 2006). As such, the only remedy available to the Plaintiff would be injunctive relief. However, as the Plaintiff is no longer incarcerated at Pontiac Correctional Center, there is no ongoing constitutional violation and injunctive relief is unavailable. Accordingly, Defendants are entitled to summary judgment.

## XIII.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY IN THIS CAUSE OF ACTION.

At all times relevant herein, Defendants acted in good faith in the performance of official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. To the extent that any of the Defendants are found liable for constitutional deprivations without their personal involvement, the ruling against Defendants in this matter would represent an announcement of new law of which the Defendants could not have been aware at the time they took the alleged actions, and the Defendants are entitled to qualified immunity. Similarly, Plaintiff is essentially asserting that because the Defendants denied his grievances, they were retaliating against him for his prior lawsuits and grievances. The Defendants conducted investigations and found that Plaintiff's claims could not be substantiated. There is no evidence that the Plaintiff can offer to show that the Defendants denied his grievances out of retaliation. If the Plaintiff's claims were substantiated and the Defendants still denied his grievances, a claim of retaliation potentially would have merit. But given the state of the evidence available and the existing case law, Defendants are entitled to qualified immunity.

WHEREFORE, for the above and forgoing reasons, Defendants respectfully request that this Honorable Court enter summary judgment in their favor and grant any further relief the Court deems necessary and proper.

Respectfully submitted,

LES AMDOR, SHERRY BENTON, SHARON EDEN, MARGE HAAB, PATRICK HASTINGS, DELECTOR KENNEDY, KATINA LIVINGSTON, LEX McBURNEY, MARK McNABB, CARRIE MELVIN, JENNIFER MELVIN, MICHAEL MELVIN, STEPHEN D. MOTE, NANCY OSMAN, CHRISTIAN PAUL, STEWART PENOYER, TIMOTHY POTTS, PAULA RICH, EMILY RUSKIN, MARK SPENCER, ROGER E. WALKER, JR., WESLEY WILES, and COREY WILSON,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois,

Attorney for Defendants,


By ____s/ Jason P. Young_____
Jason P. Young, #6279522
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Telephone: (217) 782-9056
Facsimile: (217) 782-8767
E-Mail: jyoung@atg.state.il.us

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| FABIAN SANTIAGO, #B-79716, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1429 |
| | ) | |
| ROGER E. WALKER, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2007, I electronically filed Defendants' Motion for Summary Judgment, with the Clerk of Court using the CM/ECF system, and I hereby certify that on the same date, I mailed by United States Postal Service, the document to the following non-registered participant:

Fabian Santiago, #B79716
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

Respectfully submitted,

s/ Jason P. Young
Jason P. Young, #6279522
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-9056
Facsimile:  (217) 782-8767
jyoung@atg.state.il.us