IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

**FILED**
OCT 1 - 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Fabian Santiago                                         Civil No. 04-1429

   Vs.

Roger E. Walker, Jr. et.al;                             Judge, Harold A. Baker

PLAINTIFFS RESPONSE, TO THE DEFENDANTS REQUEST FOR SUMMARY JUDGEMENT

Now comes the plaintiff, Fabian Santiago, pro-se & prays that this Honorable Court grant the plaintiffs response, to the defendants request for summary judgement. In support thereof, the plaintiff states as follows:

**MATERIAL FACTS IN DISPUTE**
1.) Defendant(s), Wesley Wiles, Mark McNabb, Les Amdor, Patrick Hastings, Katina Livinston, Carrie Melvin, Jennifer Melvin, Nancy Osman, Stewart Penoyer, Emily Ruskin, Stephen Mote, Sherry Benton, & Roger E. Walker, Jr., were all prison officals overseeing & in review of the grievance procedure, & either were personally involved in or refused to take or even so much as recommend corrective action regarding the plaintiffs correspondences, publications, grievances, legal documents, etc., either being witheld for months @ a time, intercepted, tampered with, lost or distroyed. The plaintiff did not report a single instance, but rather a systematic pattern of incidents regarding such abuses, & considering that, there were hundreds of similar complaints by other I/Ms, all of the above listed defendants refused to cease & decist from engaging in such practices or refused to take corrective measure, because it was the unwritten protocol of these defendants to work in colaberation to lie, deny, & conceal such unlawful abuses against I/Ms, & due to the liabilities involved.

2.) Defendant(s), Marge Haab was the mail room supervisor, who was fully aware of the systematic breakdown of the instituional mailing system, where the plaintiff & hundreds of other I/Ms had their correspondences, publications, grievances, legal documents, etc., witheld for months @ a time, intercepted, tampered with, lost or distroyed. The plaintiff made such abuses known to defendant Haab, either through the filing of grievances or correspondences, & identified specific instances of such practices taking place, however, defendant Haab refused to cease & desist from ingaging in such unlawful misconduct & refused to take or even recommend corrective measures, due to such practices being implimented as punitive measures against I/Ms, especially I/Ms who sought to report staff misconduct, let alone, attempt to persue litigation against the employees of the I.D.O.C. Timothy Potts was the personal property supervisor, where the plaintiffs books/literary works were processed, & where defendant Potts was fully engaged in the witholding or distruction of I/M property. The plaintiffs literary works were witheld for a two (2) month periode of time, before the plaintiff was finally afforded his personal items.

3.) Defendant(s), Paula Rich, Sharon Edon, & Mark Spencer were officals in supervisory authority or running the daily opperations of the law library. The plaintiff brought it to the attention of these defendant, either through the filing of grievances, personal conversations or correspondences that, the plaintiffs grievances, legal briefs, affidavits, etc., were either not being copied or distroyed. when the plaintiff attempted to report these abuses through the grievance procedure or brought these matters to the attention of these defendants through personal conversation, these defedants would become inraged, & beligerant tordes the plaintiff, & demand that, the plaintiff continue to forward his documents through the mail, in order to allow these defendants to distroy the plaintiffs materials. All of the above mentioned fendants were obligated & required to personally recover & return the legal materials of I/Ms, however, these defendants refused to do so, as a means to lower the plaintiff into submitting his legal documents through the mail, so such defendants might engage in the distruction of the plaintiffs materials & claim never to have received them.

4.) Defendant(s), Lex McBurney was the c/o who worked the cellhouse cage, during the second shift (3:00 PM to 11:00 PM), where all I/M mailing from the mail room was received for processing/delivery to I/Ms, & I/M mailings were recovered & processed for delivery out of or throughout the facility. defendant McBurney was reknown for boasting & engaging in the intercepting, witholding, & distruction of I/M mailings. On numerous occations the plaintiffs correspondences, grievances, legal documents, etc., were intercepted, distroyed or returned to the plaintiff by defendant McBurney. In one specific instance, defendant McBurney informed defendant Christian Paul that, he (McBurney) was not allowing a correspondence of the plaintiffs out of the facility, due to the plaintiff arguing with his (plaintiffs) relatives & requesting the search for an attorney who would assist the plaintiff in filing sute regarding the abuses which the plaintiff was being subjected to while @ the Pontiac.c.c. The plaintiffs corresponce was returned by defendant Paul, for the above mentioned reasons, & defendant Paul refused to insure that the plaintiffs mailings were forwarded out of the institution. The plaintiff filed numerous grievances regarding specific incidents of defendant McBurney & Paul engaging in such practices, however, the very prison officals overseeing the grievance procedure were well aware of such abuses, & refused to take corrective action, as a means of retrobution against the plaintiff, & in order to prevent the plaintiff from documenting staff misconduct & litigation against the employees of the I.D.O.C.

5.) Defendant(s), Delector Kennedy was the major for the north cellhouse unit, where the plaintiff was being detained. Defendant Kennedy was fully aware of the systematic breakdown & exploytation of the institutional mailing system, grievance procedure, & law library, where the mailings, grievances, & legal documents of I/Ms were ruteinly witheld for months @ a time or distroyed. The plaintiff personally brought it to the attention of defendant Kennedy that, the plaintiffs legal documents to the court had been forwarded to the mail room with money vouchers attached, yet the plaintiff receiving no varification that such materials had been forwarded out of the facility. Defendant Kennedy refused to insure or take corrective action regarding the plaintiff legal materials, because it was a well known & excepted practic to distroy the mailings of I/Ms. Defendant Correy Wilson was the supervisor of the internal affairs unit, & was fully aware of the systematic breakdown & explytation of the institutional mailing system, grievance procedure, & law library. The plaintiff brought it to the attention of defendant Wilson of specific instances of the plaintiffs mailings being witheld for months @ a time, or distroyed, however, defendant Wilson refused to take or recommend corrective action regarding the plaintiffs concerns, due to such abuses being so previlent & excepted as the norm throughout the institution.

6.) Every defendant listed throughout this actions claims not to have had prior knowledge of the plaintiffs prior litigations, grievances, etc., however, clearly stipulated to throughout the plaintiffs grievances itself, the plaintiff indicated that, due to the plaintiffs prior litigations, grievances reporting staff misconduct, cooperating with law enforcement to criminally indict various prison guards, & speaking out against the deplorable conditions & wide spread staff misconduct against I/Ms @ the facility, & bringing such matters to the attention of the plaintiffs relatives, public officals, news organizations, law enforcement, etc., the plaintiff was made a prime target for retrobution by prison guards/officals, who either personally carried out or refused to take corrective measures to insure that the plaintiff would no longer be subjected to such abuses. The defendants overseeing & sitting in review of the plaintiffs grievances were clearly knowledg eable of such facts, by simply reading the plaintiffs grievances, & the defendants overseeing the grievance procedure brought these matters to the attention of the defendants who personally carried out such abuses by either reading or showing the plaintiffs grievances to such defendants.

7.) Knowledge of the plaintiffs prior litigations, grievances reporting staff misconduct, cooperating with law enforcement to indict prison guards, & speaking out against the deplorable conditions & abuses @ the facility to relatives, news organizations, public officals, etc., could obviously be known by other means, such as the handling of the plaintiffs mailings, which were done by defendants Haab, McBurney, Paul. Defendant Stephen Mote was clearly aware of the plaintiff communication with law enforcement, due to Mr.Mark of the Illinois State Police, & Mr.Hardesty of the Federal Bureau of Investigation personally meeting with the plaintiff @ the Pontiac.c.c., so there were a number of factors & avenues for every defendant listed throughout this action to become knowledgeable of the plaintiffs prior litigations, grievances reporting staff misconduct, etc. Defendant Michael Melvin was made aware of the plaintiff forwarding correspondence to defendant Mote reporting the tampering, witholding, & distruction of the plaintiffs mailings to his relatives. & defendant Melvin then directed c/o Doss to completely strip the plaintiff of all his property, leaving the plaintiff with nothing more than his underwear. This action was for the sole perpose to instil fear & discourage the plaintiff from reporting staff misconduct.

8.) Defendant, Mark McNaab specificaly claims not to have reviewed the plaintiffs grievance of: June 29, 2004, due to being unable to read the plaintiffs handwritting &/or the plaintiffs grievance being submitted as an emergency grievance to the warden. Any & all grievances submitted by the plaintiff under the emergency grievance guildlines, which were rejected by the warden as emergency grievances were ultimately processed through the normal/regular grievance procedure requiring the counselor, grievance officer, warden, A.R.B., & director to conduct their reviews, so regardless of the plaintiffs grievance being submitted under the normal or emergency grievance guildlines, the plaintiffs grievance ultimately was to be reviewed by defendant McNaab. Moreover, defendant McNaab had reviewed numerous handwritten grievances submitted by the plaintiff (prior) to this specific grievance, & never claimed to have had any difficulty deciphering the plaintiffs grievances. The plaintiff appealed defendants McNaabs assertion of being unable to read the plaintiffs handwritting, & the A.R.B. directed defendant McNaab to address/respond to the plaintiffs grievance, & (miraculously) defendant McNaab was finally capable to reading the plaintiffs handwritting, & responded to the plaintiffs grievance. Defendant McNaabs claim not to have been able to read the plaintiffs handwritting was simply a ploy to prevent the plaintiff from having his grievance addressed, in order to prevent the plaintiff from later litigating such an incident before a court of law.

9.) Defendant, Roger E. Walker, Jr., also contents that, he never personally sat in review of the plaintiffs grievances, but rather a designee of defendant Walker. Defendant Walker is paid a salary of well over $100,000.00 a year, for his expertise, knowledge, & capability in the supervising & running of the States correctional facilities. Defendant Walkers designee, is a direct agent of defendant Walker, & it is the duty of defendant Walker to insure that, not only himself, but his designee function within & in complience with the law. The plaintiff brought a systematic pattern of misconduct/reprisal to the attention of defendant Walker, & the plaintiffs reports of such previlent abuse should of caused alarm & triggered some means of corrective action needing to be taken, however, the plaintiffs concerns were completely disregarded, which resulted in further & numerous instance of the plaintiff being subjected to such unlawful practices. For the court to take the position that, defendant Walker should be held liable for such abuses, would lead to an unpresidented ruling, allowing every diector, warden & supervisory offical to be immune from any accountability, by simply allowing a designee to sign his/her name off on any complaints/reports of unlawful activity.

10.) Every defendant listed throughout this action was fully aware of the systematic breakdown & exploytation of the instituional mail system, grievance procedure, & law library, where the mailings, correspondences, publications, grievances, legal documents, etc., of I/Ms were intercepted, tampered with, witheld for months @ a time from either being delivered to I/Ms or forwarded out of the facility, left unresponded to, distroyed, lost, etc., & the defendants in this cause either were direct participants & fully engaged in carrying out such abuses or sat in supervisory positions to take or recommend corrective action, yet refused to do so, in order to prevent the documentation of staff misconduct, litigations against the employees of the I.D.O.C., & to make it loud & clear to such I/Ms who made such reports or engaged in such activity that, they (I/Ms) would surely be subjected to retalitory abuses. Not only did the plaintiff report a varity of incidents regarding such abuses, but there were hundreds of other I/Ms with similar reports, yet the unwritten protocol of the defendants was to lie, deny, & conceal such transpirings @ every & any cost.

11.) The defendants also content that, the plaintiff has indicated that there existed a policy of distroying the grievances of I/Ms @ the Pontiac.c.c. However, the defendants are once again attempting to misconstrue the plaintiffs accounts. The plaintiff clearly indicated that, there existed an (un-written policy) of distroying the grievances of I/Ms, which was being condoned by the very officals overseeing the grievance procedure, in order to prevent I/Ms from documenting staff misconduct, & ultimately persuing litigation against the employeees of the I.D.O.C.

12.) The defendants in this cause have submitted a requested for summary judgement, & have orchestrated various affidavits simply contesting the specific accounts of their involvement regarding such unlawful practices, which are listed throughout the plaintiffs Federal Civil Rights Action/Amended Complaint. The defendants were fully engaged, either through their personal involvement or failure to act, & have not only filed completely false pleadings before this forum of law, but have demonstrated an unrepentant & unremorseful disposition. I/Ms who reported staff misconduct, let alone, attempted to persue litigation against the employees of the I.D.O.C. were almost immediately targetted for retrobution, in order to serve as a deterrent against I/Ms who engaged in such activity. Many incidents of prison violence/abuse are not reported, because prisoners are afraid to snitch, because prison officals discourage there reporting. Roland Vs. Johnson, 856 F.2d 764, 770 (6th Cir. 1988).

13.) The defendant involved in this action also have the audasity to invoke qualified immunity, dispite willfully, calculatingly, systematically, maliciously, & sadisticly carrying out, refusing to prevent or concealing such abuses/reprisals against the plaintiff. The infringement on the Constitutional Rights of the plaintiff has been intentional & purposeful. Shango Vs. Jurich, 681 F.2d 1091 (7th Cir. 1982). I.D.O.C. supervisory officals & their employees knowingly & willingly participated in the deprevation. McBride Vs. Soos, 679 F.2d 1223 (7th Cir. 1982). Because supervisory officals deliberately failed to act to prevent the deprivation, their action contributed to the misconduct of their subbordinates, each having personal liability. Wolf-Lillie Vs. Sonquist, 699 F2d 864, @ (7th Cir. 1983). Smith Vs. Rose, 761 F.2d 360 (7th Cir. 1985). Rascon Vs. Hardiman, 803 F.2d 269 (7th Cir. 1986). In Monnell, the court held that, the municipality will be liable if the unconsitutional action taken by its employees were caused by a municipal policy or (custom). The court went beyond Monroe Vs. Pape (1961) & ruled that, local governments were not immune from suit under title 42, § 1983 of the U.S. Code.

14.) The U.S. Supreme Court has ruled that, a money judgement against a public officer in his offical capacity imposes liability upon the employing agency, regardless of whether or not the agency was named as the defendant in the suit. Brandon Vs. Holt, 105 S.Ct 873 (1985). The I.D.O.C. may be held liable for the civil righta violations on the basis of a single decision, as opposed to a pattern of decisions made by an authorized state policy. Pembaur Vs. City of Cincinnati, 475 U.S. 469 (1986). No qualified immunity when denying pain medication. Walker Vs. Benjamin, 293, F.3d 1030 ($7th Cir. 2002).

15.) Defendants who directly participate in Constitutional violations may be held liable for their own actions. An allegation that the warden ordered a lockdown & the the departmental director approved it sufficiently alleged their personal involvement in the resulting Constitutional deprivations. Martin Vs. Lane, 766 F.Supp. 641, 649-50 (N.D.Ill 1991). Director of corrections held liable for his knowing failure to remedy improper segregation of prisoners. Smith Vs. Rowe, 761 F.2d 360, 369 (7th Cir. 1985). A prisoner who had written to jail captain, corrections director, 7 sheriff about gang members threats, with no response, could pursue claims against them for his later assault. Poone Vs. Elrod, 706 F.Supp. 636, 638 (N.D.Ill 1989). Warden could be held liable if he accepted a policy or (custom) of due process denials in disciplinary hearings. Williams Vs. Smith, 781 F.2d @ 324. A policy need not be formal or written to serve as the basis for liability. Leach Vs. Shelby County Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989). Tacit authorization may be sufficient. Fruit Vs. Norris, 905 F.2d 1147, 1151 (8th Cir 1990).

**RETALIATION**
16.) The plaintiff has stipulated, within his Federal Civil Rights Action/Amended Complaint, the specific actions & in actions of every single defendantlisted throughout this cause, & the proximity of such events/incidents, in order to demonstrate the relaitory nature & intent of the defendants. Impeding grievance exhaustion violates access to the courts, exhaustion under the P.L.R.A. is a prerequizite to the filing of a § 1983 action concerning prison conditions, therefore, the administrative grievance procedure was now an intregal component of litigation. Davis Vs. Milwakee, 225 F.Supp. 2d 967 (E.D.Wis. 2002). A prisoner has a Constitutioal Right to access to the court that, by necessity include the right to persue administrative remedies which must be exhausted before seeking redress from the courts. Prison officals may not retaliate against a prisoner because that prisoner filed a grievance, this is so even if the adverse action does not independently violate the Constitution. DeWalt Vs. Carter, 224 F.3d 607 &th Cir. 2000).

**ACCESS TO THE COURT**
17.) The plaintiff has stipulated, within his Federal Civil Rights Action/Amended Complaint, the specific incidents, actions, &failure to take action, regarding the interception & distruction of the plaintiffs grievances reporting staff misconduct, the plaintiffs petitions to the Levingston County Court seeking to obtain injunctive relief concerning such abuses being carried out against the plaintiff, & the plaintiffs petition/appeal to the U.S. Supreme Court concerning the plaintiffs criminal conviction, etc. The plaintiff suffered actual injury in the distruction of such documentation, due to the originals of such materials being distroyed by the defendants, & the plaintiff having to rewrite every single document over, & having to rely simply off of memory to reformulate & write such documents over, therefore, the plaintiff was force to submit the gist of his accounts to the court, instead of being able to stipulate every single element & factor in support of the plaintiffs accounts before the court, which clealy deminished the plaintiffs litigations & the plaintiffs ability to obtain a favorable verdict regarding the plaintiffs litigations which were brought before the Levingston County Court seeking injunctive relief, & the plaintiffs litigations within the U.S. Supreme Court concerning the plaintiffs criminal conviction.

18.) The distruction of the plaintiffs petitions to the Levingston County Court, & U.S. Supreme Court, hinder the plaintiffs ability to demonstrate to this court that such materials ever existed, & allowing the plaintiff to enter such documentation into evidence, due to the defendant distroying such materials. Moreover, the distruction of the plaintiffs grievances, was not only done so to prevent the plaintiff from documenting staff misconduct, but also in order to stonewall the plaintiffs efforts from raising such incidents before a court of law. The plaintiffs ability to prove to the court, & enter such grievances into evidence has been prevented, due to the defendants distroying such grievances. The plaintiff being systematically subjected to numerous instances of abuse/reprisal by the defendants, where the plaintiffs correspondences, grievances, legal documents, etc., were witheld, distroyed, left unrsponded to, or where no corrective action was taken, also prevented the plaintiff the plaintiff from having access to this very court, & filing this instant action. The plaintiff could not file this very action, due to the defendants carrying out such actions, which discouraged & prevented the plaintiff from filing this complaint while @ the Pontiac.c.c., for fear of further retrobution or of the plaintiffs legal filing with the Central District Court being interfeared with. The plaintiff was left with little other alternative, but to endure being targetted for abuse/reprisal @ the hands of his jailers for well over a year, before the plaintiff was transfered to the Stateville.c.c., where the plaintiff was finally able to submit this very Federal Civil Rights Action/Amended Complaint.

**EVIDENCE TO BE PRESENTED**

19.) The defendants also content that, the plaintiff has no evidence in support of his claims, however, the totality of the circumstances surrounding this litigation, the systematic pattern of incidents, the personal actions of the defendants or their failure to take corrective action, the close proximity of events, the fact that, the plaintiff was personally subjected to such abuses/reprisals or the plaintiffs personal knowledge of such unlawful practices being carried out, in conjunction with the plaintiffs own personal testimony/accounts, must be weighed in by the jury, in order to determine the likelyhood of such transpiring unfolding by & through the defendants. The plaintiff will also be presenting to the jury the very grievances which the plaintiff filed regarding the events, correspondences which the plaintiff submitted to the defendants notifying them (defendants) of such incidents, money vouchers, audits of the plaintiffs account demonstrating that funds were forwarded to the plaintiff by his relatives, but of the plaintiff receiving no correspondences/publications from his relatives, which accompanied such funds. The plaintiff will also submit to the jury invoices from distributors where the plaintiff purchased various publication, which will indicate that such venders immediately forwarded the plaintiff literary works to the Pontiac.c.c., yet prison officals witholding such literature/books for months before actually affording the plaintiff his publications, books, magazines, etc. The plaintiff wil also provide the jury with confiscation receipts served to the plaintiff by the publications review comm. which would further prove that, such publications were processed by the defendants months after the vender actually forwarded such materials to the facility. The money voucher receipts also indicate the date in which the plaintiff forwarded his mailings out of the facility, & the date in which the defendants actually processed such mailings, which in most instances were weeks, if not months beyond the date from when the plaintiff submitted such mailings to the defendants.

20.) The plaintiff will also have subpoena, I/M Lawrence Don Jenkins, as well as several other I/Ms, who will testify to the fact that, they (I/Ms) were personally subject to having their mailings, grievances, & legal documents witheld for months, distroyed or retaliated against for reporting staff misconduct, & that, the knowledge of a systematic breakdown & exploytation of the institutional mailing system, grievance procedure, & law library was well established & known amunst both I/Ms & staff, & that, the reporting of such unlawful practices by prison employees through the grievance procedure, almost instantanously resulted in retrebution, in the form of: unwarrented cell searches, & even further delays or distruction of mailings, grievances or legal documents, etc. The plaintiff is unable @ this time to list the other I/M witnesses who will be testifying to these facts, as the names of such I/Ms are located in the plaintiffs property boxes stored @ the prisons law library, & the facility is currently under lockdown statuce.

21.) The plaintiff will also have subpoena, Mr.Mark of the Illinois State Police, & Mr.Rob Hardesty of the Federal Bureau of Investigation, in order to testify & support the plaintiffs accounts regarding the plaintiff cooperating with law enforcement to criminally indict various prison guards who carried out assaults & retrobution against the plaintiff, & due to the plaintiff cooperating with law enforcement in such matters, this was (one) of the factors as to why the defendants held such a revile/indifference tordes the plaintiff, & either choose to personally carry out, refused to take corrective action regarding such abuses, or sought out to conceal such transpirings.

22.) Contrary to what the defendants have alleged, every single element of this cause is in dispute, with the exception of the plaintiff-being housed @ the Pontiac.c.c. during the time of these events, the defendants were unable to conceal that fact. Moreover, the defendants have submitted only excerpts of the plaintiffs deposition, rather than the entire deposition itself, in order to misconstrue the plaintiffs versions of events regarding the particular point which the defendants are attempting to demonstrate to the court. The plaintiff also reserved signiture upon the deposition transcript, & upon review of the deposition transcript, the plaintiff viewed & had to correct numerous errors.

23.) Although the plaintiffs motions to compell discovery have been denied, due to the defendants completely false & misleading pleadings/assertions to the court, the plaintiff has filed his (objection) to the courts refusal to issue an order to compell, & has provided the court with basis to reconsider & recall its prior ruling, in denying the plaintiffs request to compel discovery. Considering that discovery disputes have not been finalized & are still pending for ruling before the court, the defendants request for summary judgement can not be granted upon this basis alone. Salahuddin Vs. Coughlin, 993 F.2d 306, 309-10 (2nd Cir. 1993).

24.) The courts deadline for the filing of dispositive motions was set for August 17th, 2007, however, the defendants request for summary judgement was not filed until August 31st, 2007. Although the defendants have filed a motion requesting an enlargement of time, the plaintiff has filed his (objection) to such an enlargement of time, & the court has not granted such an enlargement of time, therefore, the defendants request for summary judgement is bared from review on this basis alone (time bared).

25.) The plaintiff has submitted his Federal Civil Rights Action/Amended Complaint, clearly outlining & stipulating specific incidents, dates/time, & identifying the exact defendants who were either personally involved or the defendants who refused to take corrective action & sought out to conceal such abuses. The plaintiffs Amended Complaint was type written from scratch, signed under penalty of perjury, & accompanied with a proff of service-also signed under penalty of perjury. The plaintiffs Amended Complaint therefore can or should be verified by the court. The plaintiffs Amended Complaint should also be construed by the court as an (affidavit) in opposition to summary judgement. The plaintiffs Amended Complaint/Affidavit should be consolidated by the court togeather with the plaintiffs response to the defendants request for summary judgement, as such filings by the plaintiff are in conjunction & intricately connected to one another. Neal Vs. Kelly, 963 F.2d 453 (D.C. Cir. 1992). McNeal Vs. Macht, 763 F.Supp. 1458, 1461 (E.D.Wis. 1991).Williams Vs. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Williams Vs. Amams, 935 F.2d 960, 961 (8th Cir. 1991).

26.) Matushita Electric Industrial Co., Ltd Vs. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986); Hathaway Vs. Coughlin, 841 F.2d 48, 50 (2nd Cir. 1988); Smith Vs. Maschner, 899 F.2d 940, 949 (10th Cir. 1990). Circumstamtial evidence could create an issue of material fact barring summary judgement. Wilson Vs. City of Chicago, 707 F.Supp. 379, 381-82 (N.D.Ill 1989), Summary judgement could not be granted to a police supervisor whose conduct permitted the inference that he condoned or encouraged excessive force. The fact that a risk was obvious is circumstantial evidence that will permit a jury or judge to conclude that the defendants did know about it, even if there is no direct evidence about what the defendants knew. Farmer Vs. Brennan, 114 S.Ct @ 1981-82. LaMarca Vs. Turner, 995 F.2d 1526, 1536-37 (11th Cir. 1993).

Wherefore, the plaintiff prays that this Honorable Court construe the plaintiffs Amended Complaint as an affidavit, & consolidate the plaintiffs Amended Complaint/ affidavit togeather with the plaintiffs response to the defendants request for summary judgement, & deny summary judgement in favor of the defendants.

Note: The preponderence of evidence standard simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence. Re Winship, 397 U.S. 358, 371, 90 S.Ct 1068 (1970).

/s/ _____

Mr.Fabian Santiago. #B-79716

PO Box 112  Joliet, Il 60434

9 of 9

Note:

     The plaintiff will also subpeona, c/o Andrews, who was assigned to the second shift (3:00 PM to 11:00 PM), & located within the north cell unit where the plaintiff was being housed. c/o Andrews will be able to testify to having personally known defendant Lex McBurney, & having full knowledge of defendant McBurneys involvement in numerous instances of intercepting, tampering, witholding, & the distruction of I/M mailings, grievances, & legal documentation.

The plaintiff will also have subpeona, Lt.Brewer, who was assigned to the fist shift (7:00 AM to 3:00 PM), & located within the north cell unit where the plaintiff was being housed. Lt.Brewer will be able to testify to having full knowledge, & have received numerous complaints from I/Ms regarding the systematic breakdown & exploytation of the institutional mail system, grievance procedure, & law library, where the mailings, correspondences, publications, grievances, legal documents, etc., of I/Ms were ruteinly witheld for months, lost, distroyed, left unresponded to, etc. Lt.Brewer will also attest to the fact, of such knowledge being well known amungst the prison staff & I/Ms.

The plaintiffs Federal Civil Rights Action/Amended Complaint, should be construed by the District Court as an affidavit in opposition to the defendants request for summary judgement. The plaintiffs Amended Complaint/Affidavit should be consolidated togeather with the plaintiffs "response" to the defendants request for summary judgement. The plaintiffs "response" to the defendants request for summary judgement is a supporting document to the plaintiffs Amended Complaint/Affidavit, in opposition to the defendant request for summary judgement.

**AFFIDAVIT/DECLARATION**


I, Mr.Fabian Santiago, Hereby declare that, I am the plaintiff in the cause of: Santiago Vs. Walker, Jr. et.al  Civil No. 04-1429  Judge, Harold A. Baker. I have filed a Federal Civil Rights Action/Amended Complaint before the court giving account to specific instances of abuse/reprisal which I was subjected to while being detained @ the Pontiac.c.c. Upon the date of: September 5th, 2007, I became in receipt of the defendants filing request summary judgement, & contained within the defendants request for summary judgement, the defendants have blatantly attempted to mislead the court by giving false accounts in their (defendants) denyal of having any personal involvement or failing to take corrective measure regarding the unlawful abuses/reprisals which I was subjected to.

I have given factual, specific, & concise accounts of the defendants actions or inactions, which are contained & outlined throughout my Amended complaint, & response to the defendants request for summary judgement. I have always moved in good faith with the filing thruthful & accurate accounts/pleadings before the District Court. However, after the review of the defendants accounts/claims listed throughout their (defendants) request for summary judgement, I have found such accounts/claims by the defendants to be factually incorrect & deliberately misleading.

Pursuant to 28 USC 1746, 18 USC 1621, I declare, under penalty of perjury that, I am a named party in the above listed action, I have read the documents discribed to within this affidavit, & that, the accounts I have given have been true & correct to the best of my knowledge & recollection.

/s/ _[signature]_,

Mr.Fabian Santiago. #B-79716

PO Box 112  Joliet, Il 60434

To: U.S. Department of Justice  
Washington, D.C. Office

September 23rd, 2007

Re: Santiago Vs. Walker, Jr. et.al;  
Civil No. 04-1429  
Judge, Harold A. Baker

      Upon the date of: July 18th, 2003, I was subjected to a henious assault by a Sgt.D. Childers, while various prison guards stood as look out during the assault. This incident took place @ the Menard.c.c., & my injuries & accounts of this matter were recorded by the medical staff & internal affairs unit. I was immediately transfered to the Pontiac.c.c. where personal prison guard associates of Sgt.Childers continued to carry out assaults & retrobution against myself. A Mr.Rob Hardesty of the Federal Bureau of Investigation personally interviewed me regarding such incidents while I was detained @ the Pontiac.c.c., for possible criminal indictments against such prison employees.

I was housed @ the Pontiac.c.c. from July of 2003 to Nov of 2004, & during my detainment @ this institution prison guards & officals allowed or engaged in the most sadistic & egregious abuses imaginable against I/Ms. There existed a systematic breakdown & exploytation of the facilities institutional mailing system, grievance procedure, & law library, where the mailings, correspondences, publications, grievances, legal documents, etc., of I/Ms were rutienly intercepted, tampered with, witheld for months from being delivered to I/Ms or forwarded out of the institution, distroyed, or left unresponded to. I/Ms who attempted to report staff misconduct through the grievance procedure or complained about such conditions to relatives, public officals, etc., were almost instananeously subjected to reprisal, in the form of: unwarrented cell searches, strip searches, false discipilinary tickets, further tampering with the mailings being received or forwarded out of the facility, the distruction of grievances, legal documents, etc.

Conditions @ the Pontiac.c.c. were so deplorable that, I/Ms often engaged in the flinging of feces @ one another & staff, I/Ms rutienly declared hunger strikes, or attempted suicides. In one particular instance an I/M died from hanging, in yet another, I/Ms broke through there walls & beat another I/M into accoma-& it is my understand that the I/M ultimately died from his injuries, & in yet another incident, prison guards brutally beat an I/M to death with their bare fist. absolute mayhem & caoise was the excepted norm, & prison guards & officals were fully engaged in allowing or personally partaking in such conditions of confinement. I have filed a Federal Civil Rights Action (entitled above) regarding prison guards/officals systematically subjected me to all forms of abuse/reprisals, & where my mailings, grievances, legal documents, etc., were rutienly intercepted, witheld for months, left unresponded to, distroyed, etc., & where I was made a prime target for retrebution for reporting staff misconduct & persuing litigation against the employees of the I.D.O.C.

During my detainment @ the Pontiac.c.c. I/Ms protested such conditions by engaging in a massive hunger strike, & the most critical arguments which I/Ms raised was: being brutally beaten & denied medical attention, in order to prevent the documentation of such assaults by prison guards, the systematic exploytation of the institutional mailing system, grievance procedure, & law library, where the mailings of I/Ms were being witheld for months @ a time before being deliever to I/Ms or forwarded out of the facility, I/Ms being subjected to retrebution by guards for reporting staff misconduct through the grievance procedure & of grievances either being distroyed or left unresponded to, & of legal documents being distroyed by the law library staff. Contained within my Federal Civil Rights Action are specific instances, dates/times, & the identities of prison guards/officals who partook or allowed such abuses to be carried out against myself, & prison guards/ooficals have filed their response regarding my suit denying any involvement or that such a pervasive practic existed, dispite there being literally hundreds of complaints, grievances, reports, etc., filed by I/Ms which still exist.

Upon the date of: August 31st, 2007, the defendants involved in my civil suit have filed for summary judgement, by & through the attorney generals office (Mr.Jason P. Young). The defendants were not only fully engaged in such practices of unlawful misconduct, but there is ample evidence demonstrating a systematic pattern of such abuse, & the attorney generals office is well aware of such documentation/reports. The Illinois attorney-generals office has a very long history of refusing to criminally prosecute prison guards/officals for their egregious abuses against I/Ms, due to such prosecutions having some implications in civil suits which may later be filed by I/Ms regarding such abuses. Mr.Young has also taken it upon himself to file completely false & misleading pleading with the court, in order to conceal the actual transpiring which unfolded & which were carried out by prison guards/officals. I can understan Mr.Young vigorously defending his clients interest, however, the filing of completely false pleadings within a Federal Court of law is unethical, & gives rise to offical, civil, & criminal acts of misconduct on the part of Mr.Young.

I am requesting that your office inquires as to my concerns, for possible criminal prosecution against Mr.Young, because it could not be made anymore evident that, the Illinois attorneys generals office will not cease & desist from such cover ups, & the filing of false pleadings within a Federal Court of law until criminal indictments are handeddown regarding such unlawful misconduct. There is a serious conflict of interest between the attorney generals office consisting of the highest brach of State law enforcement, having the duty to vigorously investigate & criminally prosecute prison guards/officals for their henious & egregious abuses against I/Ms, & @ the time representing prison guards/officals with respect to such abuses, when I/Ms file suit.

/s/ [signature]

Mr.Fabian Santiago. #B-79716

PO Box 112   Joliet, Il 60434

2 of 2

## AFFIDAVIT/DECLARATION

I, Mr.Fabian Santiago, Hereby declare that, I am the plaintiff in the cause of: Santiago Vs. Walker, Jr. et.al; Civil No. 04-1429 Judge, Harold A. Baker, & have filed a Federal Civil Rights Action/Amended Complaint giving factual & accurate accounts of prison guards/officals @ the Pontiac.c.c. carrying out all forms of unlawful abuse/reprisal. After becoming in receipt & reviewing the defendants request for summary judgement, which was filed by & through Mr.Jason P. Young of the attorney generals office, i have beared witness & have become knowledgeable of the defendants filing completely false & misleading pleading within a Federal District Court, through the filing & contained in the filing of summary judgement.

I have forwarded to the: U.S. Department of Justice, located @: 10th st. Pennsylvania Ave. N.W. Washington, D.C. 20503, a two (2) page correspondence/ formal complaint requesting a criminal inquiry/prosecution against Mr.Jason P. Young for the willful & deliberate filing of completely false & misleading pleadings within a Federal District Court, & that, my accounts contained in my correspondence to the: U.S. Department of Justice, which is dated: September 23rd, 2007, are given in good faith & thruthfully.

Pursuant to 28 USC 1746, 18 USC 1621, I declare, under penalty of perjury that, I am a party to the above listed action, & that, The accounts that I have given in my correspondence dated: September 23rd, 2007, are both true & correct to the best of my knowledge & recollection.

/s/ _Fl S+q0_ ,

Mr.Fabian Santiago. #B-79716

PO Box 112  Joliet, Il 60434

IN THE
U.S. Dist. Court for the
Central Dist. of Illinois

Fabian Santiago )
Plaintiff, )
) Case No. 04-1429
v. )
)
Roger E. Walker, Jr. Et.Al; )
Defendant

## PROOF/CERTIFICATE OF SERVICE

TO: Court Clerks Office
309 Federal Building
100 N.E. Monroe
Peoria, Il 61602

TO: Mr. Jason P. Young
500 South. Second st.
Springfield, Il 62706

PLEASE TAKE NOTICE that on September 25th, 2007, I have placed the documents listed below in the institutional mail at Stateville Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service:

Plaintiffs response, to the defendants motion for summary judgement, affidavits, & exhibits.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: 9/25/07

/s/ [signature]
NAME: Fabian Santiago
IDOC#: B-79716
Stateville Correctional Center
P.O. BOX 112
Joliet, IL 60434

Revised Jan 2002