UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

FABIAN SANTIAGO,
    Plaintiff,

vs.       04-1429

ROGER WALKER,
    Defendant.

**SUMMARY JUDGEMENT ORDER**

This cause is before the court for consideration of the defendants' motion for summary judgement and the plaintiff's response. [d/e 110].

I. BACKGROUND

The pro se plaintiff brought this lawsuit pursuant to 42 U.S.C.§1983 claiming that defendants at the Pontiac Correctional Center violated his constitutional rights. The plaintiff's 23 surviving defendants include Roger Walker, Sherry Hile-Benton, Stephen Mote, Patrick Hastings, Jennifer Melvin, Carrie Melvin, Michael Melvin, Katina Levingston, Nancy Osman, Mark Spencer, Paula Rich, Sharon Eden, Lex McBurney, Wesley Wiles, Delector Kennedy, Emily Ruskin, Marge Heg, Timothy Potts, Correy Wilson, Les Amdore, Christian Paul, Stewart Penoyer and Mark McNabb. The plaintiff's surviving claims include:

    1) the defendants violated his First Amendment rights when they repeatedly interfered with grievances by refusing to make copies, refusing to respond, failing to forward or destroying them in retaliation for the plaintiff's previous grievances or lawsuits;

    2) the defendants violated the plaintiff's right to meaningful access to the courts under the First Amendment when they interfered with the plaintiff's grievances;

    3) the defendants violated the plaintiff's First Amendment rights when they repeatedly interfered with his outgoing mail in retaliation for previous lawsuits and grievances; and

    4) the defendants violated the plaintiff's First and Fourth Amendment rights based on repeated delays and/or tampering and/or censoring of his outgoing mail.

The claims are against the defendants in their individual and official capacities.

The defendants have filed a motion for summary judgment. [d/e 110]. The court found that the plaintiff's initial response to the motion was inadequate. [d/e 116]. Since the plaintiff was proceeding pro se, the court gave the plaintiff additional time and directions for filing a response. *See* November 28, 2007 Court Order. The plaintiff has now filed a supplemental response. [d/e 119]

## II. FACTS

The plaintiff did not directly respond to the defendants' statement of undisputed facts. Therefore, the following facts are taken from the motion for summary judgement, the response and the attached exhibits.

The plaintiff was an inmate at the Pontiac Correctional Center during the relevant time periods of his complaint. The defendants have provided copies of grievances filed by the plaintiff on the following dates:

| | | |
|---|---|---|
| August 24, 2003 | March 15, 2004 | June 25, 2004 |
| September 26, 2003 | March 22, 2004 | June 29, 2004- 2 grievances |
| October 10, 2003 | May 7, 2004 | July 16, 2004 |
| December 29, 2003 | June 2, 2004 | July 28, 2004. |

Each of these grievances show the plaintiff did receive a response from a grievance officer and a counselor. The plaintiff appealed most to the Administrative Review Board and received a response.

Defendant Les Amdor is a correctional counselor and was a member of the Publications Review Committee at Pontiac Correctional Center. Defendant Amdor says he did not have any involvement with the plaintiff's grievances, nor his outgoing mail.

Defendant Carrie Melvin was a grievance officer at the time period relevant to the plaintiff's complaint. Defendant C. Melvin says she had no involvement with the plaintiff's outgoing mail. She did recommend the plaintiff's grievance dated June 2, 2004 be denied because his claims of staff misconduct could not be substantiated. The defendant says the recommendations was based on a total review of the available information. Defendant C. Melvin says she never received a grievance from the plaintiff dated either January 30, 2004 or March 3, 2004.

Defendants Patrick Hastings, Jennifer Melvin, Stewart Penoyer and Emily Ruskin were also employed as grievance officers at the relevant time periods of the complaint. None of the these defendants say they had any involvement with the plaintiff's outgoing mail. However, each recommended that at least one of the plaintiff's grievances alleging staff misconduct be denied. Defendant Hastings handled the October 10, 2003 grievance; Defendant Melvin handled the December 29, 2003 grievance; Defendant Penoyer handled the October 21, 2003 grievance; and Defendant Ruskin handled the June 29, 2004 and July 16, 2004 grievances. Defendant Ruskin also investigated and responded to plaintiff's October 10, 2003 grievance. In each of these instances, the defendants say they denied the grievances because the plaintiff's claims could not be substantiated. The defendants claim they based their recommendation on the available information.

Defendant Wesley Wiles was a correctional counselor at Pontiac Correctional Center. The defendant says he had no involvement with the plaintiff's outgoing mail. However, Defendant Wiles says as counselor, he responded to and investigated the plaintiff's October 21,

2003 grievance and December 29, 2003 grievance and found the allegations could not be substantiated. Defendant Wiles says he never received grievances dated October 3, 2003, October 9, 2003, January 30, 3003 or March 3, 2004.

Defendant Mark McNabb says he was also employed as a counselor and responded to the plaintiff's May 7, 2004 grievance; June 2, 2004 grievance and July 16, 2004 grievance. The defendant says he told the plaintiff he could not read his handwriting in the June 2, 2004 grievance, but denied the other two grievances because the plaintiff's claims could not be substantiated. Defendant McNabb says he did not respond to the plaintiff's June 29, 2004 grievance because the plaintiff filed it as an emergency grievance and it went directly to the Warden's office. The defendant also says he never received grievances from the plaintiff dated October 3, 2003; October 9, 2003; January 30, 2004 or March 3, 2004. The defendant says he had no involvement with the plaintiff's outgoing mail.

Defendant Timothy Potts says he was employed as a Sergeant at the time period of the plaintiff's complaint. Defendant Delector Kennedy worked as a Major at the institution. Defendant Michael Melvin was a Unit Manager. Defendant Corey Wilson was an Internal Affairs Investigator. These defendant says they had no involvement with either the plaintiff's grievances or his outgoing mail.

Defendant Lex McBurney was a correctional officer at Pontiac Correctional Center. The defendant says he had no involvement with the handling of the plaintiff's grievances. Defendant McBurney does not directly address whether he ever handled inmate mail.

Defendant Marge Haab was the mail room supervisor. The defendant says she never had involvement with the plaintiff's grievances.

Defendant Mark Spencer says he was employed as Executive I at Pontiac Correctional Center during the relevant time periods of the plaintiff's complaint. Defendants Sharon Eden and Paula Rich were employed as a paralegals. Defendants Spencer, Rich and Eden say in August of 2003, the plaintiff forwarded a grievance to the law library for copying. The plaintiff was provided with one copy, but his request for additional copies was refused.

Defendant Sherry Benton was the Chairperson for the Office of Inmate Issues for the Illinois Department of Corrections. As part of her job, Defendant Benson says she would review and respond to grievances filed by inmates in accordance with department rules. The defendant says all of the plaintiff's grievances that she reviewed were denied based on a total review of the available information. "Given that review, it was the opinion of the ARB (Administrative Review Board) that the issue was appropriately addressed by the institutional administration and the allegations of staff misconduct could not be substantiated." (Def. Mot, Ex. W). Defendant Benton says he had no involvement with the plaintiff's outgoing mail.

Defendant Stephen Mote was the Warden at Pontiac Correctional Center. Defendant Mote says he had no involvement with any of the plaintiff's outgoing mail. As for grievances, Defendant Motes says either he or his designee concurred in the denial of the plaintiff's grievances based on the recommendations and investigations of the grievance officers and

counselors.

The plaintiff, in his deposition, says that the interference with his grievances caused delays in his ability to file lawsuits. (Def. Memo, Ex. B, Plain Depo., p. 60-61) The plaintiff admits that he was able to eventualy file each lawsuit. *Id*. at 61.

All of the defendants state there was no policy to destroy, tamper with or delay inmate mail.

### III. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Nonetheless, "(s)ummary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### IV. ANALYSIS

A. MEANINGFUL ACCESS TO THE COURTS.

The defendants argue that the plaintiff has failed to demonstrate that he was denied meaningful access to the courts. An access to the courts claim only arises if the plaintiff suffered "actual injury" from the inability to pursue a nonfrivolous claim. *Lewis v. Casey*, 116 S.Ct. 2174, 2179-80 (1996); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998)(actual injury occurs when plaintiff blocked from litigating a nonfrivolous case).

In his deposition, the plaintiff states the interference with his grievances caused delays in the filing of lawsuits. However, the plaintiff admits that he was not prevented from filing the lawsuits. (Def. Memo, Ex. B, Plain Depo., p. 60-61) In response to the dispositive motion, the plaintiff says some of the documents he planned to file in Livingston County were destroyed, and he was forced to redo them from memory. The plaintiff also claims various delays made it difficult for him to file this lawsuit.

Nonetheless, claiming a delay in filing ligation is not enough. "Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation." *Gentry v. Duckworth,* 65 F.3d 555, 559 (7th Cir. 1995). The motion for summary judgement on this claim is granted.

B. INTERFERENCE WITH GRIEVANCES

The defendants argue the plaintiff cannot demonstrate that they retaliated against for his previous grievances by interfering with his attempts to file additional grievances. A prisoner is entitled to participate in the prison grievance process without fear of reprisal. Therefore, if a prison official retaliates against a prisoner for filing a grievance, the official violates the First Amendment. *Lekas v. Briley,* 405 F.3d 602, 614 (7th Cir. 2005). To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996).

The plaintiff has not met his burden. First, the plaintiff has not demonstrated that the defendants interred with his ability to file any grievance. The defendants have presented the court with copies of 13 grievances. In each case, the plaintiff did receive a response from the defendants. There is no evidence of tampering or delay or failure to respond. The plaintiff in his response makes reference to other grievances, but has failed to provide any evidence that these grievances exist. In fact, the plaintiff states:

> The plaintiff intended on submitting every grievance which was filed regarding these matters to the court for review, however, the defendants have already submitted such grievances as exhibits together with their (defendants) request for summary judgement. (Plain Resp. p. 10).

The only evidence before the court is that the plaintiff was successful in filing multiple grievances. The plaintiff is "under an obligation to respond to [defendants'] motion in a timely fashion and to place before the court all materials its wishes to have considered when the court rules on the motion." *Cowgill v. Raymark Industries, Inc.,* 780 F.2d 324, 329 (3rd Cir. 1985). He must "show through *specific evidence* that a triable issue of fact remains." *Liu v. T & H. Machine, Inc.,* 191 F.3d 790, 796 (7th Cir. 1999). " At this stage, it is not enough for plaintiff to state his subjective belief that he was the subject of retaliation." *Reimann v. Rock,* 2006 WL 2849868 at 8(W.D. Wis. Oct. 3, 2006); *see also Vukadinovich v Board or School Trustees of North Newton School Corporation,* 278 F.3d 693, 700 (7th Cir. 2002).

Second, the plaintiff has not shown that Defendants Spencer, Rich and Eden retaliated against him by failing to make a copy of a grievance. The defendants have presented evidence that they did make a copy of the plaintiff's grievance, but they refused to make more than one copy. The plaintiff has presented no evidence that he was entitled to more than one free copy. The defendants have also provided evidence that they returned the plaintiff's grievance to him. The plaintiff claims he never received it. Even if the court assumes the plaintiff did not receive

his grievance back, the plaintiff has failed to show this was intentional or an act of retaliation.

Third, the plaintiff has failed to show that Defendants Amdor, Potts, Kennedy, M. Melvin, McBurney or Habb had any involvement with the plaintiff's grievances or the grievance procedure. "(A) defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). In addition, the doctrine of *respondeat superior* (supervisor liability) does not apply. *Pacelli v. DeVito,* 972 F.2d 871, 877 (7th Cir. 1992). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v Peters,* 97 F.3d 987, 992 (7th Cir. 1996). The motion for summary judgment on this claim is granted.

C. TAMPERING AND/OR DELAYS AND/OR CENSORING OUTGOING MAIL

The defendants argue that the plaintiff cannot demonstrate that they violated his First and Fourth Amendment with repeated delays or censoring or tampering with his outgoing mail. "The free-speech clause of the First Amendment applies to communications between an inmate and outsider." *Zimmerman v Tribble,* 226 F.3d 568, 572 (7th Cir. 2000). Denial of mail or lengthy, repeated delays in receiving mail may be serious enough to violate the constitution. However, "[a]llegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded in the First Amendment." *Id.*

The plaintiff has failed to demonstrate that the defendants were purposefully delaying or tampering with his mail. First, the plaintiff cannot demonstrate that Defendants Potts, Kennedy, M. Melvin, Wilson, Spencer, Rich or Eden had any involvement with the plaintiff's mail. In addition, the only connection the plaintiff alleges that Defendants C. Melvin, Hastings, J. Melvin, Penoyer, Ruskin, Wiles, McNabb, Benton and Mote had with his mail is they denied his grievances. In each of the grievances before the court, the plaintiff's claims were investigated and not substantiated. There is no evidence that these defendants were directly involved in the distribution or withholding of the plaintiff's mail, nor is there any evidence that these defendants had any reason to believe that the plaintiff's constitutional rights were being violated.

Second, the plaintiff has repeatedly made vague accusations about the problems with his mail.[1] The plaintiff does attempt to provide some specific claims in his second response to the motion for summary judgement. For instance, the plaintiff alleges that on five occasions his outgoing letters were never delivered. This includes a September 11, 2003 letter to his grandmother; a September 28, 2003 letter to a prosecutor's office; a March 3, 2004 letter to his grandmother and two letters in June and July of 2004 to the Chicago Tribune. The plaintiff does

---

[1] For instance, in response to the plaintiff's March 15, 2004 grievance, Defendant McNabb informed the plaintiff that he could not address "literally hundreds" of incidents and the "offenders complaints were too general." (Def.Memo, Ex. D 1). In addition, the court gave the plaintiff additional time to file a response to the pending summary judgement motion because he made "general and vague claims against the defendants." November 28, 2007 Text Order.

not explain how he knows the letters were not delivered or what evidence he has that the problem occurred within the correctional center.

Instead, the plaintiff claims that Defendant McBurney must have destroyed the letters because this defendant was working when he mailed the letters and McBurney had bragged about destroying inmate mail in the past.  The plaintiff does not allege that he ever gave the letters to McBurney, that he ever saw McBurney with the letters, that McBurney ever made comments about these letters or that any of the intended recipients stated that they had not received the letters.  The plaintiff's only evidence is his bare accusation.  This is not enough to rebut a motion for summary judgement.

Third, the plaintiff alleges that he paid for magazines that he did not receive.  The plaintiff provides no information about the specific titles of the magazines involved.  The only evidence before the court demonstrates that on July 16, 2004, the plaintiff was denied several magazines that were deemed to be "obscene" including magazines entitled "Nasty" and "Hardcore." ( Def. Memo, 7-16-04 publication receipt).

Fourth, the plaintiff claims that legal mail was opened outside of his presence.  However, the plaintiff fails to provide any information about the specific legal mail involved.  The plaintiff did file one grievance on this matter and was informed that the mail in question was from a clerk's office and not considered privileged legal mail.

Finally, the plaintiff says that his incoming mail was delayed once up to a month.  The plaintiff filed a grievance concerning the issue on December 29, 2003 and received a response.  The plaintiff was informed that the mail room was sending out mail as soon as possible, but due to the holidays, the staff was behind schedule.  The mail room staff stated they had brought in additional employees to help and mail should be dispensed more quickly.   This is not the kind of sustained and long-term delay that rises to a constitutional violation.

**ITS IS THEREFORE ORDERED that:**

> **1) The defendants' motion for summary judgement  is granted pursuant to  Fed. R. Civ. P. 56. [d/e 110]   The clerk of the court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.  This case is terminated. The plaintiff has paid the filing fee in full.**

> **2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1))(c).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

Entered this 8th day of September, 2008.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE